**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

              Plaintiff,

        vs.

CAMERON HESS,

              Defendant.

_____/

Criminal Action No.
1:23-cr-0086

Washington, DC
February 26, 2024

11:19 a.m.

**TRANSCRIPT OF SENTENCING**
**BEFORE THE HONORABLE ROYCE C. LAMBERTH**
**UNITED STATES DISTRICT JUDGE**

<u>**APPEARANCES**</u>:

For the Government:    **TIGHE BEACH**
                    USAO-DC
                    601 D Street, NW
                    Washington, DC 20001

For the Defendant:    **ELITA AMATO**
                    2111 Wilson Blvd., 8th Floor
                    Arlington, VA 22201

Court Reporter:       **JEFF HOOK**
                    Official Court Reporter
                    U.S. District & Bankruptcy Courts
                    333 Constitution Avenue, NW
                    Room 4700-C
                    Washington, DC 20001

**P R O C E E D I N G S**

**DEPUTY CLERK:**  This is criminal case 23-086, United States of America v. Cameron Hess.  Starting with the government, please approach the podium and state your appearance for the record.

**MR. BEACH:**  Good morning, Your Honor.  Tighe Beach for the United States.

**MS. AMATO:**  Good morning, Your Honor.  Elita Amato on behalf of Mr. Hess, who is present.

**THE COURT:**  I guess the first issue would be the -- which guidelines to apply in the case.  There is a difference of opinion regarding the issue of the application, so I'm going to have the government address that.  In Ms. Amato's excellent brief, as usual from Ms. Amato, she raises this issue about that interpretation of the violence question.  You didn't address that in your memo, as to whether that would affect the guidelines in terms of the -- whether that's a violence issue.  So if you want to go ahead and address that first.

**MR. BEACH:**  Yes, Your Honor.  You're asking about 4C1.1?

**THE COURT:**  Yes.

**MR. BEACH:**  Okay.  We did address it in our memo. I don't know if you have it, but it's on --

**THE COURT:**  Well, I did read what you addressed,

but you didn't specifically address the cases and the issues as she poses them.

MR. BEACH:  Yes, Your Honor.  So we're applying the definitions used by the other courts in the district when we're interpreting use of violence or credible threat of violence, which is the language under 4C1.1, I believe (a)(3).  Give me one moment.  Here we go.  Those definitions -- I'm sure the Court has read through those, but the use of physical force typically accompanied by fury, vehemence or outrage that was applied by -- in Bauer.  And we cited back to the facts in Bauer and analogized the facts here.

Mr. Hess -- and you'll see in my presentation, that Mr. Hess pushes with his right arm against an officer attempting to close the door while Mr. Hess is attempting to keep the door open.

THE COURT:  So he's pushing against the door?

MR. BEACH:  One hand against the officer, one hand against the door, yeah.  You'll see that in video and in still images.

THE COURT:  So that is an assault, because he's pushing the officer himself.

MR. BEACH:  Your Honor, we charged --

THE COURT:  Assaultive conduct.

MR. BEACH:  We charged 111(a) in this case, yes,

but allowed a plea to 231.  So there is violence being used at that door.  If you -- we have a still image of the defendant's face as he's pushing against the officer, and it's clear that he's -- those words apply, fury, vehemence, outrage.  He's engaging with the officer with those emotions.  You can see it on his face in one of the still images in my presentation.

So this is an even more clear case than in Bauer.  Because in that case, Judge McFadden applied that the physical violence -- evidence was less strong, but he said he would have found that as violence, but also it was a credible threat in that case because she was shouting things at the officers.  Here, we don't need to get to the threats, because the push against the officer is use of violence.

**THE COURT:**  Okay.  Ms. Amato.

**MS. AMATO:**  So I don't think there's a dispute as to --

**THE COURT:**  I'm sorry, I can't hear you.

**MS. AMATO:**  I'm sorry, Your Honor.  I don't believe that there is a dispute regarding the definition of violence.  I believe we agree -- although we've cited different cases.  I've cited Judge Bates' more recent case of February 9th, United States v. Yang, in which Judge Bates defines the term violence using the dictionary, because it's not in the guidelines, as:  "Physical force usually

accompanied by fury, vehemence or outrage, especially physical force unlawfully exercised with intent to harm, or as physical force so as to injure, abuse, damage or destroy."

Clearly there was no physical force to injure, abuse, damage or destroy here nor was there physical force used with the intent to harm.  So I think really the only question is whether it was accompanied by fury, vehemence or outrage.  It's our position it wasn't.  It's our position that whatever expressions he had on his face were part of the -- as he's at the door and he's trying to keep the door open as he's pushing on one hand -- with one hand he's pushing to prevent people to come to him, on the other hand he's pushing with the door.  I mean, it's a very small space and so he gets caught -- I mean, as far as I could see it.  And so his face is expressing what he's feeling as he's in this position, but not that he himself is showing fury, vehemence or outrage.

As in the United States v. Yang, in that case the defendant did make physical contact with the officer as well.  So it's similar to this case.  He grabbed the officer's wrist, he later grabbed an officer's baton.  So again, just because an individual makes contact with an officer, it does not necessarily then rise to a level of violence as described -- or as the courts -- these other

courts have used that definition.  So we believe that this case is similar to Yang and not the case that the government cites of Bauer.

I have reviewed some of the videos of Bauer, because I had a defendant in a different case who was at various times in the same vicinity as Bauer.  I also reviewed the sentencing memorandum of the actual co-defendant with Bauer, and her actions were repeated, extreme.  There was clearly a lot of anger and vehemence by the words that she was using.  We don't have that here.  That's all I have, Your Honor, on that issue.

THE COURT:  Is the -- the guidelines, though, will still be a total offense level of 11, criminal history category one, won't they?

MS. AMATO:  So with -- so let me see, how did I determine them.

THE COURT:  Or are you trying to take away points under the guidelines?

MS. AMATO:  So if Your Honor were to apply 4C1.1, then it would go down to level nine.  It would be a reduction from level 11 to level nine, so the guidelines would be four to nine months, which is less than --

THE COURT:  I'm sorry, I can't hear you.

MS. AMATO:  The guidelines would be four to nine months, which is less than what is in the presentence report

where the --

THE COURT:  If you did not apply that provision?

MS. AMATO:  Correct.  So if it's not applied, it's level 11.

THE COURT:  And let me look at that wording again. Okay, I think I understand the argument.  Let me ask the government one other question, then.

In Judge Bates' case of Yang where he addressed this precise argument, he said that even though Yang made physical contact with the two officers, including briefly grabbing an officer's wrist, and later grabbing an officer's baton, the contact was not made with an intent to harm, and not made with an intent to injure, wasn't accompanied with fury, vehemence or outrage.  I understand it was an assault, but if it wasn't made with an intent to injure, abuse, damage or destroy, I'm not sure that I want to go contrary to what Judge Bates did in Yang.  So I'm not sure that I do think it's appropriate to apply that guideline in this case.

Tell me if you have any --

MR. BEACH:  Understood, Your Honor.

THE COURT:  -- good reason I should go contrary to Judge Bates.

MR. BEACH:  I would point Your Honor to some of the exhibits, sentencing exhibits, that we submitted.  If we're digging into intent in this moment that the defendant

is walking toward the officers, the Court needs to consider the context of that choice, right.

THE COURT: I understand.

MR. BEACH: And in the body-worn camera --

THE COURT: Now, this is when he -- he has been outside, and this is when he's trying to get others to go in?

MR. BEACH: Right, he's the only one approaching the officers who are attempting to close the doors. And in the body-worn camera, right before you see him approach, that officer is rescuing another officer who is down on the ground outside those doors. This is the chaos and the violence of this moment. The Court can reasonably assume that the defendant saw that -- saw that there was an officer down who needed rescue. And right after rescuing that officer, the defendant -- right after the victim officer rescues that officer, the defendant approaches and assaults.

So it's not just -- the look on his face is helpful when determining his intent, but it's also that choice given the context of everything that he has seen to this point, and the PepperBalls being fired at him, the fact that they were just evicted, pushed out by the police. And now he alone, while covering his face with his jacket after seeing that officer being rescued, is going to engage physically and attack that officer who's attempting to close

the door.

So obviously it's always hard to determine intent, but here, given that context, everything that the defendant had seen when he made that decision to push the officer with his right hand while holding the door open with his left, either definition that you apply -- and we would argue for the definition that Judge McFadden applies, that it's clear that he is physically pushing that officer with the requisite intent, the rage, the vehemence.  He's clearly angry in this moment, and he's attempting to breach the Capitol by himself -- breach the Capitol, keep those doors open.

So I would just point the Court back to the video and to the pictures, and the Court should be able to determine that the defendant had that intent.

**THE COURT:**  I looked at it, and I think you have to be correct.  So I will overrule the defendant's objection, and I'll apply that here and find that that was an act of violent -- with a violent intent to make way into the Capitol.  So I'll apply the total offense level 11 with a criminal history category one.  So the guidelines would be eight to 14 months, then, in custody.  The probation period would be one to five years.  Fine, the guideline provision would be $4,000 to $40,000.  Restitution would be $2,000.  Special assessment, $100.

So then having made a final determination on the guidelines, I'll take allocution with the government going first.

MR. BEACH:  Thank you, Your Honor.  May I begin?

THE COURT:  Yes.

MR. BEACH:  Thank you.  Cameron Hess, seen here outside the east Rotunda door, stormed this entrance to the Capitol building on January 6, 2021.  At 3:24 p.m., the defendant pushed into the Capitol with the mob, while a line of officers attempted to contain them and to push them back out.  You can see that line of officers at the bottom of the image here, the defendant circled in yellow.

The defendant held his jacket up to protect himself from breathing the pepper being fired by the police. You can see the PepperBalls hitting the walls next to the doorframe in this video.  He pushed with the mob against the officers for several minutes, preventing them from being able to clear the area.  Eventually the officers successfully evicted the defendant and the mob from the Capitol.  But you can see that line of officers now attempting to move them on the bottom of this image.

But at 3:30 p.m., after being forced out by the police, the defendant approached the officers attempting to close the doors and fought to keep them open.  In this clip, he will enter from the top of the screen.

(Video played)

MR. BEACH:  Here are still images from that clip showing the defendant approaching alone, covering his face with his jacket.  On the right, you can see the defendant extend his right arm, pushing the officer while holding the door open with his left.  Here is a still image from that officer's body-worn camera showing the defendant's approach.  And here is that video.  One moment.  It might be a little loud, I might have to turn it down, we'll see.  Yeah, that's pretty loud.  Sorry.  Let's try that.

(Video played)

MR. BEACH:  That clip is chaotic, which is why this still image is helpful seeing the defendant approach toward that officer.  Here is another still image, Exhibit 6, showing the defendant's rage as he pushes the officer with his right arm.  Later on January 6th, the defendant sent text messages bragging about his violent interactions with the police, quote:  "A shit ton of people are storming the Capitol building.  Yeah, I'm here.  I was in the thick of it.  Got pepper sprayed and teargassed.  I was brawling at the door."  And then later on January 9th:  "Don't tell anyone I was there, because our government is very, very angry and is prosecuting a lot of people that were there."

Here's the guidelines analysis which Your Honor

just went through.  It gets us to a final offense level of 11.  The government's recommendation is 12 months jail, which is the midpoint -- or near the midpoint, two years of supervised release, $2,000 of restitution and $100 of mandatory assessments.  Does Your Honor -- I will point Your Honor to an analogous case, Nolan Cooke, who was sentenced in this Court.  That sentence was 366 days jail, and we do think it's a fair comparison to this case.

Does the Court have any other questions?  If not, I'll conclude.

**THE COURT:**  Thank you.

**MR. BEACH:**  Thank you.

**MS. AMATO:**  So I want to address the two videos that they showed, Your Honor.  The video from the officer, it's very chaotic.  I mean, without slowing it down, I can't see what's going on, where, when, how.  He's -- and I have slowed it down.  I've slowed it down and looked at it various times, and that's the only way I've been able to try to assess when my client comes in.  But my client does not come in until after that other officer was down.  He's brought into the Capitol.  The doors are closed, and then they're opened and there's another individual that's on the ground.

When the doors are opened, then you see my client, Mr. Hess, coming to the door and then holding the door.  So

he didn't actually grab a door that was closed and try to keep it open, he grabbed a door that was open that he was then trying to hold. And then you see him, and he's -- in Government Exhibit 6, I think, where you see that still, I mean, he is in between a door -- he's got the door on one side, he's got the officers in front. Then there's other officers and other people around him. So he is squished at that moment. So to me, that's why his face is looking the way it is at that very second, because he's being -- he's feeling the impact of all these people and the chaos around him.

Now, it was his error to put himself at that location. I mean, that's a given. But I don't see him, as the government described initially, that he breached the Capitol in a forceful, violent way. I don't see that. He had his hand on the door. It was a 10-second interaction. We looked at the video, we timed it, and it was a 10-second period. The other period in which he initially came into the Capitol with other individuals behind him, and for that he was in the Capitol for about four minutes during that time period. So I just wanted to clarify a bit further as to what we just saw and what we didn't see in those videos.

As I've tried to explain in the sentencing memorandum, Mr. Hess had a very difficult life growing up.

**THE COURT:** That came across clearly, and I

understand clearly from those videos that he's made a lot of progress even since this incident.

**MS. AMATO:** Yes, exactly. And so that progress to me is very important, and I would think for the Court as well.

**THE COURT:** I agree.

**MS. AMATO:** And I think it also differentiates him from all the other individuals that the -- well, that I've put in my sentencing memorandum or that the government has mentioned, because of that progress. So, I mean, even just looking at the photo of him in the video, he looks different than what he does today. He's lost weight, gotten healthier physically. It's almost like I don't even recognize the person I see physically in the video.

Anyway, I guess I don't need to repeat all of that, because Your Honor appreciates it. And that came through also with the letter that he provided. I thought it was a very well written letter. His mother, who is in court, she also provided a useful letter that also explains his past health issues. And it also goes into the fact that there's -- that because of all of his health issues and his isolation, his growth, his maturity was stilted. So at that point, he was depressed, he was not making the right decisions. But he's done a complete 190 (sic), and so that's great to see.

In terms of the consideration of other cases, Your Honor, I provided more than just the one case -- which I believe was Your Honor's, so the Court knows that case far better than I do.  But the other cases, as well as that case, in which individuals were either -- well, I think actually everybody was sentenced to much less than what the government is asking for here.  But in all of those cases -- in fact, in almost all of those cases, there's much more activity that each of these individuals are doing.  Some of them are in the Capitol for a longer period of time.  Some of them are in the tunnel.  But to me, what I hope the Court can see from all of this is that his -- I mean, he admits he was wrong for where he was and what he did.  But he wasn't as involved and it wasn't as repetitive type of action as many of these other people were doing, where they were constantly going back a second time, a third time, walking around for a long time, putting stickers on backs of officers and things like that.

So I would say that if the Court were to sentence to what the government is asking, that would definitely be an unwarranted sentence.  I think the lowest jail sentence we received in the cases that I provided was a four-month sentence, and then -- I'm sorry, two months, but one individual even got 60 months probation and no jail time.

So in terms of deterrence, based on the complete

turnaround, I would say it's very low, so that's in his favor. In terms of unwarranted disparity, the government's sentence would be a definite -- cause an unwarranted disparity. The sentence we ask, I believe, is in line with his conduct, again, as well as all the other factors that the Court needs to consider which really put him in a different position. Thank you.

THE COURT: Okay. If you'll come forward. I was very impressed with your letter. I hope everything you said is true, because it was a very good, well done letter. I liked your mother's letter as well. And your mother's partner's letter was dynamite as well. The other letters on your behalf speak very well of you. I don't -- you're a defendant who's not the kind of defendant I ever see until these cases came along. I see people who don't have anybody sitting in the courtroom usually, except in these cases where I see kids like you that have never been in trouble in their lives. These are tough cases for a judge.

I want to believe you, I want to believe you're sincere. And I actually do. I think you did the right thing from the time I first saw you. I know you'd be nervous, but whatever you'd like to say, I'm certainly interested in hearing.

THE DEFENDANT: Yeah, thank you, Your Honor. Your words mean a lot to me. I think I just would, once again,

like to apologize and take full responsibility for my actions. I'm very sorry to -- sorry, to everybody who was directly or indirectly harmed by my actions. I accept whatever judgment is passed down to me.

**THE COURT:** Okay. I have not -- in a case where there was an actual assault charged against a police officer -- which is not the case here, I've not gone below four years, even with a guilty plea. This charge does not involve an actual assault charge. This is conduct that's close, but not the same. I am going to depart below the guidelines sentence and go to a sentence that is below the guidelines, because I'm going to recognize the medical conditions and the upbringing that you had, and the unusual life story you've had.

So pursuant to the Sentencing Reform Act of 1984, and in consideration of the provisions of 18 U.S.C. section 3553, as well as the advisory sentencing guidelines, it's the judgment of the Court that you, Cameron Hess, are hereby committed to the custody of the Bureau of Prisons for a term of nine months, rather than the guidelines sentence as suggested by the guidelines in the case. You're further sentenced to serve 36 months supervised release. In addition, you're ordered to pay a special assessment of $100 required to be imposed by 31 U.S.C. 3013.

While on supervision, you shall abide by the

following mandatory conditions as well as all the discretionary conditions recommended by the probation office in part D of the sentencing options of the presentence report, which are imposed to establish the basic expectations for your conduct while on supervision.

Mandatory conditions include:  One, you must not commit another federal, state or local crime; two, you must not unlawfully possess a controlled substance; three, you must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of placement on supervision, and at least two periodic drug tests thereafter, as determined by the Court.  Four, you must cooperate in the collection of DNA as directed by the probation office.  And five, you must make restitution in accordance with 18 U.S.C. section 3663 and 3663(a) or any other statute authorizing a sentence of restitution.

You must also comply with the following special conditions:  You must provide the probation office access to any requested financial information, and authorize the release of financial information.  The probation office may share financial information with the U.S. Attorney's Office.

MS. AMATO:  Excuse me, Your Honor, I have a question.

THE COURT:  Two -- I'm sorry, I'm still reading.

MS. AMATO:  So Your Honor, the guidelines are

eight months to 14 months, and Your Honor said the Court is departing?

THE COURT: I'm still reading the special conditions.

MS. AMATO: Okay, I apologize.

THE COURT: Two, you must participate in a mental health assessment and treatment program, and follow the rules and regulations. This is while you're on supervised release. The probation office, in consultation with the treatment provider, will supervise your participation in that program: Provider, location, modality, duration, intensity, et cetera. You must also submit to substance abuse testing in order to determine if you've used a prohibited substance. You must not attempt to obstruct or tamper with the testing methods. The Court finds you do not have the ability to pay a fine, therefore waives imposition of a fine in your case.

You are ordered to make restitution in the amount of $2,000 to the Architect of the Capitol. The Court determines you do not have the ability to pay interest, therefore waives any interests or penalties that accrue on the balance of restitution. Restitution payments shall be made to the Clerk of the Court, U.S. District Court, District of Columbia, for disbursement to the following victim: Architect of the Capitol, Office of the Chief

Financial Officer, Ford House Office Building, Room H2-205B, Washington, D.C. 20515; amount of loss, $2,000.  Financial obligations are payable to the Clerk of Court, U.S. District Court, 333 Constitution Avenue, NW, Washington, D.C. 20001.

Within 30 days of any change of address, you shall notify the Clerk of Court of the change until such time as the financial obligation is paid in full.  The probation office shall release the presentence investigation report to all appropriate agencies, which includes the probation office in the approved district of residence, in order to execute the sentence of the Court.  Treatment agencies shall return the presentence report to the probation office upon the defendant's completion or termination from treatment.

You can appeal your conviction to the U.S. Court of Appeals for the D.C. Circuit if you believe your guilty plea was somehow unlawful or involuntary, or if there's some other fundamental defect in the proceedings that was not waived in your plea agreement.  Under some circumstances, you also have a right to appeal this sentence to the D.C. Circuit.  You may waive that right as part of the plea agreement, however, and you have entered into a plea agreement which waives some of your rights to appeal the sentence itself.  Such waivers are generally enforceable, but if you believe the waiver itself is not valid, you can present that theory to the Court of Appeals.

Pursuant to 28 U.S.C. section 2255, you also have the right to challenge the conviction entered or sentence imposed to the extent permitted by that statute and your plea agreement.  Any notice of appeal must be filed within 14 days of the entry of judgment or within 14 days of the filing of a notice of appeal by the government.  If you're unable to afford the cost of an appeal, you may request permission from the Court to file an appeal without cost to you.  On appeal, you may also apply for court-appointed counsel.

Let me ask each counsel, are there any objections to the sentence as imposed that are not already noted on the record under U.S. v. Hunter?

MR. BEACH:  No objection, just a question, Your Honor.  Is that the agreed upon $2,000 of restitution?

THE COURT:  Yes.

MR. BEACH:  Thank you.

MS. AMATO:  Your Honor, I had a question.  Maybe I didn't hear correctly, but the guidelines here are eight to 14 months, and I thought Your Honor said you were going to depart from the guidelines.  And I'm not --

THE COURT:  It's either a departure or a variance.

MS. AMATO:  Okay.  And I'm sorry, what was the sentence, then?

THE COURT:  Nine months.

MS. AMATO: Nine months?

THE COURT: Right.

MS. AMATO: Okay. That is a guidelines sentence, though. The guidelines are -- for category --

THE COURT: I adopted the government's request in the presentence report. So the presentence report was eight -- oh, eight to 14, okay. Oh, so it's not even a variance, okay.

MS. AMATO: So is Your Honor going to provide a variance?

THE COURT: I'm sorry? So it's not even a variance, you're right. I assume the defendant will self-surrender upon notification.

Are there other requests you want me to make regarding the defendant's status?

MS. AMATO: Your Honor, I was hoping the Court was going to grant a variance.

THE COURT: I'm sorry?

MS. AMATO: I was hoping the Court was going to grant a variance or a departure and sentence to less than the guideline range.

THE COURT: No, I had settled upon nine months anyway.

MS. AMATO: I'm sorry, then what was the other question, Your Honor? He lives in Pennsylvania, so we would

just ask that he serve any sentence in that -- closest to where he resides in Pennsylvania.

THE COURT:  Do they have a minimum place in Pennsylvania, do you know?

MS. AMATO:  I'm not sure.  And I don't know if maybe he would go to -- well, I don't know if it's a federal facility or if they would send him to a local.  I'm not quite sure, Your Honor.

THE COURT:  Why don't we just say close to.

MS. AMATO:  Close to, that's fine.

THE COURT:  Close to?

MS. AMATO:  Close to where he resides in Pennsylvania, which is Lancaster, Pennsylvania.

THE COURT:  Okay.  Self-surrender upon designation at a facility close to -- as close as possible to Lancaster, Pennsylvania.

Anything else you want me to recommend?

MS. AMATO:  No.

THE COURT:  I wish you the best, Mr. Hess.  As I said, you have really appeared to me to have really turned your life around from this.  You admit in your letter you made a terrible mistake.  I think you're sincere, and I think you know -- and you know that I believe you made the terrible mistake.  It's a serious offense, and the Court has to treat it as a serious offense.  It was an offense that

our whole country takes as a serious offense.  I appreciate the fact that you've come to recognize it yourself.  You know, it's not something the Court can just give you a slap on the wrist and say:  Well, go do well now.  You understand, and your letter recognizes you understand, exactly what it means.  I appreciate the fact that you've come to recognize and reconcile yourself to how serious it is.  That's the first step.

You look so much better --

**THE DEFENDANT:**  Thank you.

**THE COURT:**  -- than you did in that tape.  I know you've come a long ways.  I wish you the best.

**THE DEFENDANT:**  Thank you, Your Honor.

**MS. AMATO:**  Thank you.

**THE COURT:**  The Court will be in recess.

(Proceedings adjourned at 12:00 p.m.)

**C E R T I F I C A T E**

I, **Jeff M. Hook, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

__May 24, 2024__                              _____

**DATE**                                      **Jeff M. Hook**

DEPUTY CLERK:
[1]   2/2
MR. BEACH:
[18]   2/6 2/20
2/23 3/3 3/18
3/23 3/25 7/20
7/23 8/4 8/8
10/4 10/6 11/2
11/12 12/12
21/14 21/17
MS. AMATO:
[26]
THE COURT:
[41]
THE DEFENDANT:
[3]   16/24
24/10 24/13

**$**

$100 [3]   9/25
12/4 17/23
$2,000 [5]
9/24 12/4
19/19 20/2
21/15
$4,000 [1]
9/24
$40,000 [1]
9/24

**0**

0086 [1]   1/5
086 [1]   2/2

**1**

10-second [2]
13/16 13/17
11 [5]   6/13
6/21 7/4 9/20
12/2
111 [1]   3/25
11:19 [1]   1/8
12 [1]   12/2
12:00 p.m [1]
24/16
14 [6]   9/22
19/1 21/5 21/5
21/20 22/7
15 [1]   18/10
18 [2]   17/16
18/15
190 [1]   14/24
1984 [1]   17/15
1:23-cr-0086
[1]   1/5

**2**

20001 [3]   1/15
1/25 20/4
2021 [1]   10/8
2024 [1]   1/7
20515 [1]   20/2
205B [1]   20/1
2111 [1]   1/17
22201 [1]   1/18
2255 [1]   21/1
23-086 [1]   2/2
231 [1]   4/1
26 [1]   1/7
28 [1]   21/1

**3**

30 [1]   20/5
3013 [1]   17/24
31 [1]   17/24
333 [2]   1/24
20/4
3553 [1]   17/17
36 [1]   17/22
366 [1]   12/7
3663 [2]   18/15
18/15
3:24 p.m [1]
10/8
3:30 p.m [1]
10/22

**4**

4700-C [1]
1/24
4C1.1 [3]   2/21
3/6 6/19

**6**

60 [1]   15/24
601 [1]   1/15
6th [1]   11/16

**8**

8th [1]   1/17

**9**

9th [2]   4/23
11/21

**A**

a.m [1]   1/8
abide [1]
17/25
ability [2]
19/16 19/20
able [3]   9/14
10/18 12/18
above [1]   25/5

above-entitled
[1]   25/5
abuse [4]   5/3
5/6 7/15 19/13
accept [1]
17/3
access [1]
18/18
accompanied [4]
3/9 5/1 5/8
7/13
accordance [1]
18/15
accrue [1]
19/21
across [1]
13/25
act [2]   9/19
17/15
action [2]   1/5
15/14
actions [3]
6/8 17/2 17/3
activity [1]
15/9
actual [3]   6/7
17/6 17/9
actually [3]
13/1 15/6
16/20
addition [1]
17/23
address [7]
2/13 2/16 2/19
2/23 3/1 12/13
20/5
addressed [2]
2/25 7/8
adjourned [1]
24/16
admit [1]
23/21
admits [1]
15/12
adopted [1]
22/5
advisory [1]
17/17
affect [1]
2/17
afford [1]
21/7
again [4]   5/23
7/5 16/5 16/25
against [8]
3/14 3/17 3/18
3/19 4/3 4/14
10/16 17/6

agencies [2]
20/9 20/11
agree [2]   4/21
14/6
agreed [1]
21/15
agreement [4]
20/18 20/21
20/22 21/4
ahead [1]   2/19
allocution [1]
10/2
allowed [1]
4/1
almost [2]
14/13 15/8
alone [2]   8/23
11/3
along [1]
16/15
although [1]
4/21
always [1]   9/2
AMATO [4]   1/17
2/8 2/15 4/15
Amato's [1]
2/14
AMERICA [2]
1/4 2/3
amount [2]
19/18 20/2
analogized [1]
3/11
analogous [1]
12/6
analysis [1]
11/25
anger [1]   6/9
angry [2]   9/10
11/23
apologize [2]
17/1 19/5
appeal [8]
20/14 20/19
20/22 21/4
21/6 21/7 21/8
21/9
Appeals [2]
20/15 20/25
appearance [1]
2/5
APPEARANCES [1]
1/13
appeared [1]
23/20
application [1]
2/13
applied [3]

3/10 4/9 7/3
applies [1]
9/7
apply [9]   2/11
4/4 6/19 7/2
7/18 9/6 9/18
9/20 21/9
applying [1]
3/3
appointed [1]
21/9
appreciate [2]
24/1 24/6
appreciates [1]
14/16
approach [4]
2/4 8/10 11/7
11/13
approached [1]
10/23
approaches [1]
8/17
approaching [2]
8/8 11/3
appropriate [2]
7/18 20/9
approved [1]
20/10
Architect [2]
19/19 19/25
area [1]   10/18
argue [1]   9/6
argument [2]
7/6 7/9
Arlington [1]
1/18
arm [3]   3/14
11/5 11/16
around [4]
13/7 13/10
15/17 23/21
assault [4]
3/21 7/14 17/6
17/9
Assaultive [1]
3/24
assaults [1]
8/17
assess [1]
12/19
assessment [3]
9/25 17/23
19/7
assessments [1]
12/5
assume [2]
8/13 22/12
attack [1]

**A**

**attack... [1]**
8/25
**attempt [1]**
19/14
**attempted [1]**
10/10
**attempting [7]**
3/15 3/15 8/9
8/25 9/10
10/21 10/23
**Attorney's [1]**
18/21
**authorize [1]**
18/19
**authorizing [1]**
18/16
**Avenue [2]**
1/24 20/4
**away [1]**    6/17

**B**

**back [4]**    3/11
9/13 10/10
15/16
**backs [1]**
15/17
**balance [1]**
19/22
**Bankruptcy [1]**
1/23
**based [1]**
15/25
**basic [1]**    18/4
**Bates [3]**    4/23
7/17 7/22
**Bates' [2]**
4/22 7/8
**baton [2]**    5/22
7/12
**Bauer [7]**    3/10
3/11 4/8 6/3
6/4 6/6 6/8
**BEACH [2]**    1/14
2/6
**begin [1]**    10/4
**behalf [2]**    2/9
16/13
**behind [1]**
13/19
**below [3]**    17/7
17/10 17/11
**best [2]**    23/19
24/12
**better [2]**
15/4 24/9
**bit [1]**    13/21
**Blvd [1]**    1/17

**body [3]**    8/4
8/10 11/7
**body-worn [3]**
8/4 8/10 11/7
**bottom [2]**
10/11 10/21
**bragging [1]**
11/17
**brawling [1]**
11/21
**breach [2]**
9/10 9/11
**breached [1]**
13/14
**breathing [1]**
10/14
**brief [1]**    2/14
**briefly [1]**
7/10
**brought [1]**
12/21
**building [3]**
10/8 11/19
20/1
**Bureau [1]**
17/19

**C**

**came [4]**    13/18
13/25 14/16
16/15
**camera [3]**    8/4
8/10 11/7
**CAMERON [4]**
1/7 2/3 10/6
17/18
**can [10]**    4/6
8/13 10/11
10/15 10/20
11/4 15/12
20/14 20/24
24/3
**Capitol [14]**
9/11 9/11 9/20
10/8 10/9
10/20 11/19
12/21 13/15
13/19 13/20
15/10 19/19
19/25
**case [23]**    2/2
2/11 3/25 4/8
4/9 4/12 4/22
5/19 5/21 6/2
6/2 6/5 7/8
7/18 12/6 12/8
15/2 15/3 15/5
17/5 17/7

17/21 19/17
**cases [10]**    3/1
4/22 15/1 15/4
15/7 15/8
15/22 16/15
16/16 16/18
**category [3]**
6/14 9/21 22/4
**caught [1]**
5/15
**cause [1]**    16/3
**certainly [1]**
16/22
**certify [1]**
25/4
**cetera [1]**
19/12
**challenge [1]**
21/2
**change [2]**
20/5 20/6
**chaos [2]**    8/12
13/10
**chaotic [2]**
11/12 12/15
**charge [2]**
17/8 17/9
**charged [3]**
3/23 3/25 17/6
**Chief [1]**
19/25
**choice [2]**    8/2
8/20
**circled [1]**
10/12
**Circuit [2]**
20/15 20/20
**circumstances
[1]**    20/18
**cited [3]**    3/11
4/21 4/22
**cites [1]**    6/3
**clarify [1]**
13/21
**clear [4]**    4/4
4/8 9/7 10/18
**clearly [5]**
5/5 6/9 9/9
13/25 14/1
**Clerk [3]**
19/23 20/3
20/6
**client [3]**
12/19 12/19
12/24
**clip [3]**    10/24
11/2 11/12
**close [11]**

3/15 8/9 8/25
10/24 17/10
23/9 23/10
23/11 23/12
23/15 23/15
**closed [2]**
12/21 13/1
**closest [1]**
23/1
**co [1]**    6/8
**co-defendant
[1]**    6/8
**collection [1]**
18/13
**COLUMBIA [2]**
1/1 19/24
**coming [1]**
12/25
**commit [1]**
18/7
**committed [1]**
17/19
**comparison [1]**
12/8
**complete [2]**
14/24 15/25
**completion [1]**
20/13
**comply [1]**
18/17
**conclude [1]**
12/10
**conditions [6]**
17/13 18/1
18/2 18/6
18/18 19/4
**conduct [4]**
3/24 16/5 17/9
18/5
**consider [2]**
8/1 16/6
**consideration
[2]**    15/1
17/16
**constantly [1]**
15/16
**Constitution
[2]**    1/24 20/4
**consultation
[1]**    19/9
**contact [4]**
5/20 5/23 7/10
7/12
**contain [1]**
10/10
**context [3]**
8/2 8/20 9/3
**contrary [2]**

7/16 7/21
**controlled [2]**
18/8 18/9
**conviction [2]**
20/14 21/2
**Cooke [1]**    12/6
**cooperate [1]**
18/13
**correctly [1]**
21/19
**cost [2]**    21/7
21/8
**counsel [2]**
21/10 21/11
**country [1]**
24/1
**court [37]**
**court-appointed
[1]**    21/9
**courtroom [1]**
16/16
**courts [4]**
1/23 3/4 5/25
6/1
**covering [2]**
8/23 11/3
**cr [1]**    1/5
**credible [2]**
3/5 4/12
**crime [1]**    18/7
**criminal [4]**
1/5 2/2 6/13
9/21
**custody [2]**
9/22 17/19

**D**

**D.C [4]**    20/2
20/4 20/15
20/19
**damage [3]**    5/3
5/6 7/16
**DATE [1]**    25/10
**days [5]**    12/7
18/10 20/5
21/5 21/5
**DC [4]**    1/6
1/14 1/15 1/25
**decision [1]**
9/4
**decisions [1]**
14/24
**defect [1]**
20/17
**defendant [23]**
1/8 1/17 5/20
6/5 6/8 7/25
8/14 8/16 8/17

**D**

**defendant...**
**[14]** 9/3 9/15
10/9 10/12
10/13 10/19
10/23 11/3
11/4 11/13
11/17 16/14
16/14 22/12

**defendant's [6]**
4/3 9/17 11/7
11/15 20/13
22/15

**defines [1]**
4/24

**definite [1]**
16/3

**definitely [1]**
15/20

**definition [4]**
4/20 6/1 9/6
9/7

**definitions [2]**
3/4 3/8

**depart [2]**
17/10 21/21

**departing [1]**
19/2

**departure [2]**
21/22 22/20

**depressed [1]**
14/23

**described [2]**
5/25 13/14

**designation [1]**
23/14

**destroy [3]**
5/4 5/6 7/16

**determination**
**[1]** 10/1

**determine [4]**
6/16 9/2 9/15
19/13

**determined [1]**
18/12

**determines [1]**
19/20

**determining [1]**
8/19

**deterrence [1]**
15/25

**dictionary [1]**
4/24

**difference [1]**
2/12

**different [4]**
4/22 6/5 14/11

16/7

**differentiates**
**[1]** 14/7

**difficult [1]**
13/24

**digging [1]**
7/25

**directed [1]**
18/13

**directly [1]**
17/3

**disbursement**
**[1]** 19/24

**discretionary**
**[1]** 18/2

**disparity [2]**
16/2 16/4

**dispute [2]**
4/16 4/20

**district [9]**
1/1 1/1 1/11
1/23 3/4 19/23
19/24 20/3
20/10

**DNA [1]** 18/13

**done [2]** 14/24
16/10

**door [20]** 3/15
3/16 3/17 3/19
4/2 5/11 5/11
5/14 9/1 9/5
10/7 11/6
11/21 12/25
12/25 13/1
13/2 13/5 13/5
13/16

**doorframe [1]**
10/16

**doors [6]** 8/9
8/12 9/11
10/24 12/21
12/24

**down [9]** 6/20
8/11 8/15 11/9
12/15 12/17
12/17 12/20
17/4

**drug [2]** 18/10
18/11

**duration [1]**
19/11

**during [1]**
13/20

**dynamite [1]**
16/12

**E**

**east [1]** 10/7

**eight [5]** 9/22
19/1 21/19
22/7 22/7

**either [3]** 9/6
15/5 21/22

**ELITA [2]** 1/17
2/8

**else [1]** 23/17

**emotions [1]**
4/6

**enforceable [1]**
20/23

**engage [1]**
8/24

**engaging [1]**
4/5

**enter [1]**
10/25

**entered [2]**
20/21 21/2

**entitled [1]**
25/5

**entrance [1]**
10/7

**entry [1]** 21/5

**error [1]**
13/12

**especially [1]**
5/1

**establish [1]**
18/4

**et [1]** 19/12

**even [9]** 4/8
7/9 14/2 14/10
14/13 15/24
17/8 22/7
22/11

**Eventually [1]**
10/18

**everybody [2]**
15/6 17/2

**evicted [2]**
8/22 10/19

**evidence [1]**
4/10

**exactly [2]**
14/3 24/6

**excellent [1]**
2/14

**except [1]**
16/16

**Excuse [1]**
18/22

**execute [1]**
20/11

**exercised [1]**
5/2

**Exhibit [2]**

11/15 13/4

**Exhibit 6 [1]**
11/15

**exhibits [2]**
7/24 7/24

**expectations**
**[1]** 18/5

**explain [1]**
13/23

**explains [1]**
14/19

**expressing [1]**
5/16

**expressions [1]**
5/10

**extend [1]**
11/5

**extent [1]**
21/3

**extreme [1]**
6/9

**F**

**face [8]** 4/3
4/6 5/10 5/16
8/18 8/23 11/3
13/8

**facility [2]**
23/7 23/15

**fact [5]** 8/21
14/20 15/8
24/2 24/6

**factors [1]**
16/5

**facts [2]** 3/11
3/11

**fair [1]** 12/8

**far [2]** 5/15
15/3

**favor [1]** 16/2

**February [2]**
1/7 4/23

**February 9th**
**[1]** 4/23

**federal [2]**
18/7 23/6

**feeling [2]**
5/16 13/10

**file [1]** 21/8

**filed [1]** 21/4

**filing [1]**
21/6

**final [2]** 10/1
12/1

**financial [6]**
18/19 18/20
18/21 20/1
20/2 20/7

**find [1]** 9/18

**finds [1]**
19/15

**fine [4]** 9/23
19/16 19/17
23/10

**fired [2]** 8/21
10/14

**first [5]** 2/10
2/19 10/3
16/21 24/8

**five [2]** 9/23
18/14

**Floor [1]** 1/17

**follow [1]**
19/7

**following [3]**
18/1 18/17
19/24

**force [6]** 3/9
4/25 5/2 5/3
5/5 5/6

**forced [1]**
10/22

**forceful [1]**
13/15

**Ford [1]** 20/1

**foregoing [1]**
25/4

**forward [1]**
16/8

**fought [1]**
10/24

**found [1]** 4/11

**four [6]** 6/22
6/24 13/20
15/22 17/8
18/12

**four-month [1]**
15/22

**front [1]** 13/6

**full [2]** 17/1
20/7

**fundamental [1]**
20/17

**further [2]**
13/21 17/21

**fury [6]** 3/9
4/4 5/1 5/8
5/17 7/14

**G**

**generally [1]**
20/23

**gets [2]** 5/15
12/1

**given [3]** 8/20
9/3 13/13

**G**

goes [1] 14/20
good [4] 2/6
2/8 7/21 16/10
government [13]
1/14 2/4 2/13
6/2 7/7 10/2
11/22 13/4
13/14 14/9
15/7 15/20
21/6
government's
[3] 12/2 16/2
22/5
grab [1] 13/1
grabbed [3]
5/21 5/22 13/2
grabbing [2]
7/11 7/11
grant [2]
22/17 22/20
great [1]
14/25
ground [2]
8/12 12/23
growing [1]
13/24
growth [1]
14/22
guess [2] 2/10
14/15
guideline [3]
7/18 9/23
22/21
guidelines [20]
2/11 2/17
4/25 6/12 6/18
6/21 6/24 9/21
10/2 11/25
17/11 17/12
17/17 17/20
17/21 18/25
21/19 21/21
22/3 22/4
guilty [2]
17/8 20/15

**H**

H2 [1] 20/1
H2-205B [1]
20/1
hand [7] 3/18
3/18 5/12 5/12
5/13 9/5 13/16
hard [1] 9/2
harm [3] 5/2
5/7 7/12
harmed [1]

17/3
health [3]
14/20 14/21
19/7
healthier [1]
14/12
hear [3] 4/18
6/23 21/19
hearing [1]
16/23
held [1] 10/13
helpful [2]
8/19 11/13
Here's [1]
11/25
hereby [1]
17/18
HESS [11] 1/7
2/3 2/9 3/13
3/14 3/15 10/6
12/25 13/24
17/18 23/19
himself [5]
3/22 5/17 9/11
10/14 13/12
history [2]
6/13 9/21
hitting [1]
10/15
hold [1] 13/3
holding [3]
9/5 11/5 12/25
Honor [29]
Honor's [1]
15/3
HONORABLE [1]
1/11
HOOK [3] 1/22
25/3 25/10
hope [2] 15/11
16/9
hoping [2]
22/16 22/19
House [1] 20/1
Hunter [1]
21/13

**I**

image [6] 4/2
10/12 10/21
11/6 11/13
11/14
images [3]
3/20 4/7 11/2
impact [1]
13/10
important [1]
14/4

imposed [4]
17/24 18/4
21/3 21/12
imposition [1]
19/16
impressed [1]
16/9
incident [1]
14/2
include [1]
18/6
includes [1]
20/9
including [1]
7/10
indirectly [1]
17/3
individual [3]
5/23 12/22
15/24
individuals [4]
13/19 14/8
15/5 15/9
information [3]
18/19 18/20
18/21
initially [2]
13/14 13/18
injure [4] 5/3
5/5 7/13 7/15
intensity [1]
19/12
intent [11]
5/2 5/7 7/12
7/13 7/15 7/25
8/19 9/2 9/9
9/15 9/19
interaction [1]
13/16
interactions
[1] 11/18
interest [1]
19/20
interested [1]
16/23
interests [1]
19/21
interpretation
[1] 2/15
interpreting
[1] 3/5
into [7] 7/25
9/19 10/9
12/21 13/18
14/20 20/21
investigation
[1] 20/8
involuntary [1]
20/16

involve [1]
17/9
involved [1]
15/14
isolation [1]
14/22
issue [5] 2/10
2/12 2/15 2/18
6/11
issues [3] 3/1
14/20 14/21

**J**

jacket [3]
8/23 10/13
11/4
jail [4] 12/2
12/7 15/21
15/24
January [3]
10/8 11/16
11/21
January 9th [1]
11/21
JEFF [3] 1/22
25/3 25/10
judge [9] 1/11
4/9 4/22 4/23
7/8 7/17 7/22
9/7 16/18
judgment [3]
17/4 17/18
21/5

**K**

keep [5] 3/16
5/11 9/11
10/24 13/2
kids [1] 16/17
kind [1] 16/14
knows [1] 15/3

**L**

LAMBERTH [1]
1/11
Lancaster [2]
23/13 23/15
language [1]
3/6
later [4] 5/22
7/11 11/16
11/21
least [1]
18/11
left [2] 9/5
11/6
less [5] 4/10
6/22 6/25 15/6

22/20
letter [9]
14/17 14/18
14/19 16/9
16/10 16/11
16/12 23/21
24/5
letters [1]
16/12
level [8] 5/24
6/13 6/20 6/21
6/21 7/4 9/20
12/1
life [3] 13/24
17/14 23/21
liked [1]
16/11
line [4] 10/9
10/11 10/20
16/4
little [1]
11/8
lives [2]
16/18 22/25
local [2] 18/7
23/7
location [2]
13/13 19/11
long [2] 15/17
24/12
longer [1]
15/10
look [3] 7/5
8/18 24/9
looked [3]
9/16 12/17
13/17
looking [2]
13/8 14/11
looks [1]
14/11
loss [1] 20/2
lost [1] 14/12
lot [4] 6/9
11/23 14/1
16/25
loud [2] 11/9
11/10
low [1] 16/1
lowest [1]
15/21

**M**

makes [1] 5/23
making [1]
14/23
mandatory [3]
12/5 18/1 18/6

## M

many [1]    15/15
matter [1]
  25/5
maturity [1]
  14/22
may [5]    10/4
  18/20 20/20
  21/7 21/9
maybe [2]
  21/18 23/6
McFadden [2]
  4/9 9/7
mean [8]    5/14
  5/15 12/15
  13/5 13/13
  14/10 15/12
  16/25
means [1]    24/6
medical [1]
  17/12
memo [2]    2/17
  2/23
memorandum [3]
  6/7 13/24 14/9
mental [1]
  19/6
mentioned [1]
  14/10
messages [1]
  11/17
methods [1]
  19/15
midpoint [2]
  12/3 12/3
might [2]    11/8
  11/9
minimum [1]
  23/3
minutes [2]
  10/17 13/20
mistake [2]
  23/22 23/24
mob [3]    10/9
  10/16 10/19
modality [1]
  19/11
moment [6]    3/7
  7/25 8/13 9/10
  11/8 13/8
month [1]
  15/22
months [14]
  6/22 6/25 9/22
  12/2 15/23
  15/24 17/20
  17/22 19/1

19/1 21/20
21/25 22/1
22/22
more [4]    4/8
  4/22 15/2 15/8
morning [2]
  2/6 2/8
mother [1]
  14/18
mother's [2]
  16/11 16/11
move [1]    10/21
Mr. [7]    2/9
  3/13 3/14 3/15
  12/25 13/24
  23/19
Mr. Hess [7]
  2/9 3/13 3/14
  3/15 12/25
  13/24 23/19
Ms. [3]    2/14
  2/15 4/15
Ms. Amato [2]
  2/15 4/15
Ms. Amato's [1]
  2/14
much [3]    15/6
  15/8 24/9
must [12]    18/6
  18/7 18/9
  18/10 18/13
  18/14 18/17
  18/18 19/6
  19/12 19/14
  21/4

## N

near [1]    12/3
necessarily [1]
  5/24
need [2]    4/13
  14/15
needed [1]
  8/15
needs [2]    8/1
  16/6
nervous [1]
  16/22
next [1]    10/15
nine [8]    6/20
  6/21 6/22 6/24
  17/20 21/25
  22/1 22/22
Nolan [1]    12/6
nor [1]    5/6
noted [1]
  21/12
notice [2]

21/4 21/6
notification
  [1]    22/13
notify [1]
  20/6
NW [3]    1/15
  1/24 20/4

## O

objection [2]
  9/18 21/14
objections [1]
  21/11
obligation [1]
  20/7
obligations [1]
  20/3
obstruct [1]
  19/14
obviously [1]
  9/2
offense [7]
  6/13 9/20 12/1
  23/24 23/25
  23/25 24/1
office [11]
  18/2 18/14
  18/18 18/20
  18/21 19/9
  19/25 20/1
  20/8 20/10
  20/12
officer [25]
  3/14 3/18 3/22
  4/3 4/5 4/14
  5/20 5/24 8/11
  8/11 8/14 8/16
  8/16 8/17 8/24
  8/25 9/4 9/8
  11/5 11/14
  11/16 12/14
  12/20 17/7
  20/1
officer's [5]
  5/22 5/22 7/11
  7/11 11/7
officers [13]
  4/13 7/10 8/1
  8/9 10/10
  10/11 10/17
  10/18 10/20
  10/23 13/6
  13/7 15/18
Official [2]
  1/23 25/3
once [1]    16/25
one [17]    3/7
  3/18 3/18 4/6

5/12 5/12 6/14
  7/7 8/8 9/21
  9/23 11/8 13/5
  15/2 15/23
  18/6 18/10
only [3]    5/7
  8/8 12/18
open [8]    3/16
  5/12 9/5 9/12
  10/24 11/6
  13/2 13/2
opened [2]
  12/22 12/24
opinion [1]
  2/12
options [1]
  18/3
order [2]
  19/13 20/10
ordered [2]
  17/23 19/18
others [1]    8/6
out [3]    8/22
  10/11 10/22
outrage [6]
  3/10 4/5 5/1
  5/9 5/18 7/14
outside [3]
  8/6 8/12 10/7
overrule [1]
  9/17

## P

p.m [3]    10/8
  10/22 24/16
paid [1]    20/7
part [3]    5/10
  18/3 20/20
participate [1]
  19/6
participation
  [1]    19/10
partner's [1]
  16/12
passed [1]
  17/4
past [1]    14/20
pay [3]    17/23
  19/16 19/20
payable [1]
  20/3
payments [1]
  19/22
penalties [1]
  19/21
Pennsylvania
  [6]    22/25
  23/2 23/4

23/13 23/13
  23/16
people [7]
  5/13 11/18
  11/23 13/7
  13/10 15/15
  16/15
pepper [2]
  10/14 11/20
PepperBalls [2]
  8/21 10/15
period [5]
  9/22 13/18
  13/18 13/21
  15/10
periodic [1]
  18/11
permission [1]
  21/8
permitted [1]
  21/3
person [1]
  14/14
photo [1]
  14/11
physical [9]
  3/9 4/10 4/25
  5/2 5/3 5/5
  5/6 5/20 7/10
physically [4]
  8/25 9/8 14/13
  14/14
pictures [1]
  9/14
place [1]    23/3
placement [1]
  18/11
Plaintiff [1]
  1/5
played [2]
  11/1 11/11
plea [7]    4/1
  17/8 20/16
  20/18 20/20
  20/21 21/4
please [1]    2/4
podium [1]    2/4
point [5]    7/23
  8/21 9/13 12/5
  14/23
points [1]
  6/17
police [5]
  8/22 10/14
  10/23 11/18
  17/6
poses [1]    3/2
position [4]

**P**

**position... [4]**
5/9 5/9 5/17
16/7
**possess [1]**
18/8
**possible [1]**
23/15
**precise [1]**
7/9
**present [2]**
2/9 20/25
**presentation [2]**  3/13 4/7
**presentence [6]**
6/25 18/3
20/8 20/12
22/6 22/6
**pretty [1]**
11/10
**prevent [1]**
5/13
**preventing [1]**
10/17
**Prisons [1]**
17/19
**probation [10]**
9/22 15/24
18/2 18/14
18/18 18/20
19/9 20/7 20/9
20/12
**proceedings [3]**
20/17 24/16
25/5
**program [2]**
19/7 19/11
**progress [3]**
14/2 14/3
14/10
**prohibited [1]**
19/14
**prosecuting [1]**
11/23
**protect [1]**
10/13
**provide [2]**
18/18 22/9
**provided [4]**
14/17 14/19
15/2 15/22
**provider [2]**
19/10 19/11
**provision [2]**
7/2 9/23
**provisions [1]**
17/16

**pursuant [2]**
17/15 21/1
**push [3]**  4/14
9/4 10/10
**pushed [3]**
8/22 10/9
10/16
**pushes [2]**
3/14 11/15
**pushing [8]**
3/17 3/22 4/3
5/12 5/13 5/14
9/8 11/5
**put [3]**  13/12
14/9 16/6
**putting [1]**
15/17

**Q**

**quite [1]**  23/8
**quote [1]**
11/18

**R**

**rage [2]**  9/9
11/15
**raises [1]**
2/15
**range [1]**
22/21
**rather [1]**
17/20
**read [2]**  2/25
3/8
**reading [2]**
18/24 19/3
**really [4]**  5/7
16/6 23/20
23/20
**reason [1]**
7/21
**reasonably [1]**
8/13
**received [1]**
15/22
**recent [1]**
4/22
**recess [1]**
24/15
**recognize [4]**
14/13 17/12
24/2 24/7
**recognizes [1]**
24/5
**recommend [1]**
23/17
**recommendation [1]**  12/2

**recommended [1]**
18/2
**reconcile [1]**
24/7
**record [3]**  2/5
21/13 25/5
**reduction [1]**
6/21
**Reform [1]**
17/15
**refrain [1]**
18/9
**regarding [3]**
2/12 4/20
22/15
**regulations [1]**
19/8
**release [5]**
12/4 17/22
18/20 19/9
20/8
**repeat [1]**
14/15
**repeated [1]**
6/8
**repetitive [1]**
15/14
**report [6]**
6/25 18/4 20/8
20/12 22/6
22/6
**Reporter [3]**
1/22 1/23 25/3
**request [2]**
21/7 22/5
**requested [1]**
18/19
**requests [1]**
22/14
**required [1]**
17/24
**requisite [1]**
9/9
**rescue [1]**
8/15
**rescued [1]**
8/24
**rescues [1]**
8/17
**rescuing [2]**
8/11 8/15
**residence [1]**
20/10
**resides [2]**
23/2 23/12
**responsibility [1]**  17/1
**restitution [8]**
9/24 12/4

18/14 18/16
19/18 19/22
19/22 21/15
**return [1]**
20/12
**reviewed [2]**
6/4 6/7
**right [17]**
3/14 8/2 8/8
8/10 8/15 8/16
9/5 11/4 11/5
11/16 14/23
16/20 20/19
20/20 21/2
22/2 22/12
**rights [1]**
20/22
**rise [1]**  5/24
**Room [2]**  1/24
20/1
**Rotunda [1]**
10/7
**ROYCE [1]**  1/11
**rules [1]**  19/8

**S**

**same [2]**  6/6
17/10
**saw [4]**  8/14
8/14 13/22
16/21
**screen [1]**
10/25
**second [4]**
13/9 13/16
13/17 15/16
**section [3]**
17/16 18/15
21/1
**seeing [2]**
8/24 11/13
**self [2]**  22/13
23/14
**self-surrender [2]**  22/13
23/14
**send [1]**  23/7
**sent [1]**  11/17
**sentence [20]**
12/7 15/19
15/21 15/21
15/23 16/3
16/4 17/11
17/11 17/20
18/16 20/11
20/19 20/23
21/2 21/12
21/24 22/3

22/20 23/1
**sentenced [3]**
12/6 15/6
17/22
**sentencing [8]**
1/10 6/7 7/24
13/23 14/9
17/15 17/17
18/3
**serious [4]**
23/24 23/25
24/1 24/7
**serve [2]**
17/22 23/1
**settled [1]**
22/22
**several [1]**
10/17
**shall [5]**
17/25 19/22
20/5 20/8
20/11
**share [1]**
18/21
**shit [1]**  11/18
**shouting [1]**
4/12
**showed [1]**
12/14
**showing [4]**
5/17 11/3 11/7
11/15
**sic [1]**  14/24
**side [1]**  13/6
**similar [2]**
5/21 6/2
**sincere [2]**
16/20 23/22
**sitting [1]**
16/16
**slap [1]**  24/3
**slowed [2]**
12/17 12/17
**slowing [1]**
12/15
**small [1]**  5/14
**somehow [1]**
20/16
**sorry [12]**
4/18 4/19 6/23
11/10 15/23
17/2 17/2
18/24 21/23
22/11 22/18
22/24
**space [1]**  5/14
**speak [1]**
16/13

**S**

special [4]
9/25 17/23
18/17 19/3
specifically
[1] 3/1
sprayed [1]
11/20
squished [1]
13/7
Starting [1]
2/3
state [2] 2/4
18/7
STATES [7] 1/1
1/4 1/11 2/3
2/7 4/23 5/19
status [1]
22/15
statute [2]
18/16 21/3
step [1] 24/8
stickers [1]
15/17
still [11]
3/20 4/2 4/6
6/13 11/2 11/6
11/13 11/14
13/4 18/24
19/3
stilted [1]
14/22
stormed [1]
10/7
storming [1]
11/19
story [1]
17/14
Street [1]
1/15
strong [1]
4/10
submit [2]
18/10 19/12
submitted [1]
7/24
substance [4]
18/8 18/10
19/12 19/14
successfully
[1] 10/19
suggested [1]
17/21
supervise [1]
19/10
supervised [3]
12/4 17/22

19/8
supervision [3]
17/25 18/5
18/11
sure [5] 3/8
7/16 7/17 23/5
23/8
surrender [2]
22/13 23/14

**T**

tamper [1]
19/15
tape [1] 24/11
teargassed [1]
11/20
term [2] 4/24
17/19
termination [1]
20/13
terms [4] 2/18
15/1 15/25
16/2
terrible [2]
23/22 23/24
test [1] 18/10
testing [2]
19/13 19/15
tests [1]
18/12
theory [1]
20/25
thereafter [1]
18/12
therefore [2]
19/16 19/21
thick [1]
11/20
third [1]
15/16
though [3]
6/12 7/9 22/4
thought [2]
14/17 21/20
threat [2] 3/5
4/12
threats [1]
4/13
three [1] 18/8
TIGHE [2] 1/14
2/6
timed [1]
13/17
times [2] 6/6
12/18
today [1]
14/12
ton [1] 11/18

top [1] 10/25
total [2] 6/13
9/20
tough [1]
16/18
toward [2] 8/1
11/14
transcript [2]
1/10 25/4
treat [1]
23/25
treatment [4]
19/7 19/10
20/11 20/13
tried [1]
13/23
trouble [1]
16/17
true [2] 16/10
25/4
try [3] 11/10
12/18 13/1
trying [4]
5/11 6/17 8/6
13/3
tunnel [1]
15/11
turn [1] 11/9
turnaround [1]
16/1
turned [1]
23/20
two [8] 7/10
12/3 12/13
15/23 18/7
18/11 18/24
19/6
type [1] 15/14
typically [1]
3/9

**U**

U.S [6] 1/23
18/21 19/23
20/3 20/14
21/13
U.S.C [4]
17/16 17/24
18/15 21/1
unable [1]
21/7
under [4] 3/6
6/18 20/18
21/13
Understood [1]
7/20
UNITED [7] 1/1
1/4 1/11 2/3

2/7 4/23 5/19
unlawful [2]
18/9 20/16
unlawfully [2]
5/2 18/8
unusual [1]
17/13
unwarranted [3]
15/21 16/2
16/3
up [2] 10/13
13/24
upbringing [1]
17/13
upon [5] 20/12
21/15 22/13
22/22 23/14
USAO [1] 1/14
USAO-DC [1]
1/14
use [4] 3/5
3/9 4/14 18/9
used [5] 3/4
4/1 5/7 6/1
19/13
useful [1]
14/19
using [2] 4/24
6/10
usual [1] 2/14
usually [2]
4/25 16/16

**V**

VA [1] 1/18
valid [1]
20/24
variance [6]
21/22 22/8
22/10 22/12
22/17 22/20
various [2]
6/6 12/18
vehemence [8]
3/10 4/4 5/1
5/8 5/18 6/9
7/14 9/9
vicinity [1]
6/6
victim [2]
8/16 19/25
video [10]
3/19 9/13
10/16 11/1
11/8 11/11
12/14 13/17
14/11 14/14
videos [4] 6/4

12/13 13/22
14/1
violence [12]
2/16 2/18 3/5
3/6 4/1 4/10
4/11 4/14 4/21
4/24 5/25 8/13
violent [4]
9/19 9/19
11/17 13/15

**W**

waive [1]
20/20
waived [1]
20/18
waiver [1]
20/24
waivers [1]
20/23
waives [3]
19/16 19/21
20/22
walking [2]
8/1 15/16
walls [1]
10/15
Washington [5]
1/6 1/15 1/25
20/2 20/4
way [4] 9/19
12/18 13/9
13/15
ways [1] 24/12
weight [1]
14/12
what's [1]
12/16
where the [1]
7/1
who's [2] 8/25
16/14
whole [1] 24/1
Wilson [1]
1/17
wish [2] 23/19
24/12
within [4]
18/10 20/5
21/4 21/5
without [2]
12/15 21/8
wording [1]
7/5
words [3] 4/4
6/10 16/25
worn [3] 8/4
8/10 11/7

**W**

**wrist [3]**   5/22 7/11 24/4

**written [1]** 14/18

**wrong [1]** 15/13

**Y**

**Yang [6]**   4/23 5/19 6/2 7/8 7/9 7/17

**years [3]**   9/23 12/3 17/8

**yellow [1]** 10/12